**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

NEW YORK LIFE INSURANCE
COMPANY *et al.*,

        Plaintiffs,

v.

DRAKEEL T. BURNS *et al.*,

        Defendants.

Civil Action No. 21-19292 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court on Defendant Wanda Bostick Burns's ("Wanda") Motion to Dismiss or Stay. (ECF No. 12.) Defendant Drakeel T. Burns ("Drakeel") opposed. (ECF No. 14.) Plaintiffs New York Life Insurance Company ("NY Life") and New York Life Insurance and Annuity Corporation ("NY Annuity," and collectively with NY Life, the "Insurance Companies") also opposed (ECF No. 19), and Wanda replied (ECF No. 20). Also before the Court is the Insurance Companies' Motion for Interpleader Deposit. (ECF No. 5.) The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons set forth below, the Court grants the Insurance Companies' Motion for Interpleader Deposit and grants Wanda's Motion to Stay.

**I.    BACKGROUND**

This is a case about what happens when an insured individual with life insurance dies during a divorce proceeding. (Am. Compl. ¶¶ 29-32, ECF No. 8.) More specifically, what happens to the decedent's life insurance policies that were part of his mediated divorce settlement but never formally transferred to his then-wife. (*See id.*) Over thirty years ago, Marion Burns ("Marion") submitted his first of many applications to NY Life for a life insurance policy.[1] (*See id.* ¶¶ 8-9.) Marion subsequently applied for and received four additional policies between 1989 and 2004 with varying degrees of death benefits (collectively, the "Policies"). (*Id.* ¶¶ 12-25.) Complicating the matter further, the Polices' designated beneficiaries changed over the years, with Marion transferring rights on a policy-by-policy basis between a mix of his bank trust, his first wife, Curlie Burns ("Curlie"), his second wife, Wanda, and his daughter, Drakeel. (*See id.* ¶¶ 8-25.) Take the 2004 policy, for example. Marion originally designated his daughter Drakeel as the first beneficiary and Curlie as the second beneficiary. (*Id.* ¶¶ 21-24.) Six years later, Marion changed the first beneficiary to Wanda and moved Drakeel to the second beneficiary. (*Id.* ¶ 23.) Then, in 2018, Marion designated Drakeel as the first beneficiary and Wanda as the second. (*Id.* ¶ 24.)

The puzzle doesn't end there, either. Muddying up things more, Marion and his second wife, Wanda, were in the middle of a divorce in July 2021 when Marion died of natural causes. (*Id.* ¶¶ 29, 32.) Wanda alleges that Marion agreed to in principle (but did not sign) a mediated divorce settlement agreement (the "Divorce Agreement") that awarded her ownership of Marion's five life insurance policies. (*Id.* ¶ 32.) As to at least one policy, Wanda was also to be the named beneficiary. (*Id.*) In the wake of Marion's death, Wanda's divorce litigation in South Carolina

---

[1] Three of the life insurance policies were "applied for, and delivered, in the State of New Jersey." (Drakeel's Opp'n Br. 7, ECF No. 14 (citing Am. Compl., Exs. D, G, M, ECF No. 8-1).) The other two policies were applied for and delivered elsewhere—one in Ohio and one in South Carolina. (*Id.* (citing Am. Compl., Exs. A, K).)

carried on and the Insurance Companies initiated a separate action before this Court—at the center of both are the Policies. (Ins. Cos.' Opp'n Br. 2, ECF No. 19.)

        **A.**       **South Carolina Family Court Action.**

The South Carolina divorce action began in March 2020. (Am. Compl. Ex. Q at *5, ECF No. 8-17.)[2] A year or so into the divorce proceeding, Wanda claimed that she was not paid her monthly temporary support from August 2020 through March 2021, and, through the family court, she and Marion agreed to mediation. (*Id.* at *6.) The parties successfully reached an agreement with the assistance of the mediator, which was memorialized on March 19, 2021, in email correspondence. (*Id.*) In that correspondence, the "general terms of settlement" to be finalized included Marion "transfer[ing] ownership of his four (4) whole life insurance policies to [Wanda]" as well as "designat[ing] [Wanda] as the first beneficiary of said [universal life policy] in an amount then necessary to pay off any balance due" on the outstanding alimony and spousal support. (*Id.* at *12.) Those insurance policies at issue in the settlement correspondence are the same Policies at issue here. (Am. Compl. ¶ 34.) According to Wanda, she waived certain arrearage payments she was owed by Marion to reach the final Divorce Agreement terms. (Am. Compl. Ex. Q at *8) Marion died, however, on July 30, 2021. (Am. Compl. ¶ 29.) About a day before he died, Marion's legal counsel informed Wanda that he would not seek approval of the Divorce Agreement on his death bed. (Am. Compl. Ex. Q at *8.) It was therefore never formally executed. (*Id.*) Around the same time, Wanda filed a motion to enforce the Divorce Agreement or, alternatively, seeking a trial for equitable distribution of property. (*See generally* Am. Compl. Ex. G, ECF No. 8-7.)

---

[2] Page numbers preceded by asterisks refer to the page number in the ECF header.

After Marion's death, Drakeel submitted a claim for his death benefits to the Insurance Companies in August 2021. (Am. Compl. ¶ 33.) Wanda objected, arguing that she was entitled to the death benefits and already in the process of litigating the validity of the Divorce Agreement in South Carolina state court. (*Id.* ¶ 31.) Wanda protested the Insurance Companies prematurely disbursing the death benefits to Drakeel, demanding that they "not pay out the proceeds of the Policies until [the state court] litigation is resolved." (*Id.*) Then, in September 2021, Drakeel reached out to Wanda through counsel to offer a solution where the parties would hold the Policies' proceeds in escrow and release the Insurance Companies from liability as they allow the family court action to proceed. (Wanda's Moving Br., Ex. A, ECF No. 12-1.) Wanda agreed. (Wanda's Moving Br., Ex. B, ECF No. 12-1.)

At some point, however, the communications broke down and Drakeel declined to participate in the South Carolina family court matter. (Wanda's Moving Br., Decl. of Katherine Ferguson, ECF No. 12-1.) In January 2022, Wanda moved the South Carolina court to add Drakeel as a party to the suit. (Wanda's Reply Br., Ex. A at *10-12, ECF No. 20-1.) To the Court's knowledge, that motion to add Drakeel and the overall family court suit remain pending.

### B. Federal Interpleader Action.

As mentioned, the Insurance Companies received two competing claims for the Policies' death benefits from Wanda and Drakeel in August 2021. (Am. Compl. ¶¶ 31-33.) Having no monetary interest in the death benefits apart from recovering attorney's fees and costs of this litigation (*id.* ¶ 38), the Insurance Companies initiated a federal interpleader action before this Court in October 2021 (Compl., ECF No. 1). Claiming they are "ready, willing and able" to pay the benefits to the rightful beneficiary, all that is left is to determine who that should be. (Am. Compl. ¶ 37.) As the Insurance Companies see it, the problem is that "if the [c]ourt in the [South Carolina] [f]amily [c]ourt [a]ction determines that the Mediated [Divorce] Agreement is

4

enforceable, Wanda Burns would be the owner" of multiple policies and sole beneficiary of at least one of the Policies. (*Id.* ¶ 34.) Thus, after Drakeel refused to release the Insurance Companies from liability while the state court suit wrapped up, they initiated this interpleader action to avoid double litigation and seek to deposit the death benefits with the Court. (*Id.* ¶¶ 39-41; *see also* Mot. for Interpleader Deposit 3, ECF No. 5.)

Wanda promptly moved to dismiss this action, stay it, or transfer it to the District of South Carolina. (*See generally* Wanda's Moving Br., ECF No. 12-3.) In doing so, she argues that this Court is ill-suited to decipher South Carolina family law: a necessary step in determining whether Wanda's unsigned Divorce Agreement is enforceable or whether she has an equitable claim to the death benefits. (*Id.* at 3-10.) Thus, she urges the Court to let the "intricacies of family court procedures and practices in South Carolina" play out. (*Id.* at 6.) The Insurance Companies and Drakeel oppose, arguing that the family court matter is neither parallel nor necessary to determine the instant action. (*See generally* Ins. Cos.' Opp'n Br. 3-6; Drakeel's Opp'n Br. 5-9.) In addition, the Insurance Companies argue that resolution of this action is necessary to avoid "undue delay and prejudice." (Ins. Cos.' Opp'n Br. 5-6.)

Wanda's alternative motions and the Insurance Companies' interpleader deposit motion are now before the Court.

## II. <u>LEGAL STANDARD</u>

"Interpleader may occur through the federal interpleader standard, 28 U.S.C. § 1335, or pursuant to Federal Rule of Civil Procedure 22." *JPMorgan Chase Bank, N.A. v. Neu*, No. 17-3475, 2017 WL 2290142, at *2 (D.N.J. May 24, 2017) (citing *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 275 (3d Cir. 2007)). Under the federal interpleader statute, district courts have original subject matter jurisdiction in interpleader actions if there is minimal diversity between one or more adverse claimants and an amount in controversy of $500 or more. 28 U.S.C. § 1335(a); *State Farm*

*Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530-31 (1967). The plaintiff must also deposit the funds at issue into the district court's registry. 28 U.S.C. § 1335(a)(2). As an equitable remedy, "interpleader allows 'a person holding property to join in a single suit two or more persons asserting claims to that property.'" *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 275 (3d Cir. 2007) (quoting *NYLife Distribs., Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 372 n. 1 (3d Cir. 1995)). The plaintiff in an interpleader action is a stakeholder that "fears the prospect of multiple liability" but admits it is liable to at least one of the claimants. *Metro. Life Ins. Co. v. Teixeira ex rel. Sarto*, No. 16-07486, 2017 WL 3951597, at *3 (D.N.J. Sept. 8, 2017) (citing *Metro. Life. Ins.*, 501 F.3d at 275).

An interpleader action under § 1335 "typically involves two steps: during the first, the district court determines whether the requirements of the statute have been met and whether the stakeholder may be relieved from liability; during the second, it actually adjudicates the defendants' adverse claims to the interpleaded fund." *NYLife Distribs., Inc.*, 72 F.3d at 375 (citing, among other sources, Charles Alan Write *et al.*, Federal Practice and Procedure § 1714 (2d ed. 1986)). The second step "proceeds like any other action" and adjudicates "who is lawfully entitled to the stake." *Id.* (citing *Diamond Shamrock Oil & Gas Corp. v. Comm'r of Revenues*, 422 F.2d 532, 534 (8th Cir. 1970)).

### III.   DISCUSSION

Wanda raises several theories as to why the Court should dismiss or stay this matter considering the ongoing South Carolina family court action. (*See generally* Wanda's Moving Br.) *First*, before addressing Wanda's motions, the Court must be satisfied that under 28 U.S.C. § 1335 it has jurisdiction to hear the matter. *Second*, the Court considers Wanda's alternative motions to dismiss or stay the matter in deference to the state court suit. *Third*, the Court addresses Wanda's

motion for dismissal under *forum non conveniens*. *Finally*, should the Court retain jurisdiction over the matter, it will address the Insurance Companies' Motion for Interpleader Deposit.

    **A.    The Court Has Interpleader Jurisdiction.**

The Court has original jurisdiction under 28 U.S.C. § 1335 over interpleader actions if several requirements are met, including as follows: (1) there is diversity of citizenship between two or more of the adverse claimants; (2) the amount in controversy, measured by the value of the stake, exceeds $500; (3) the action was brought in a district where one or more claimants reside; and (4) the "plaintiff has deposited such money or property" with the Court Registry. *See* 28 U.S.C. §§ 1335, 1397. As to the first requirement, diversity of citizenship is satisfied: Wanda is a resident of South Carolina and Drakeel is a resident of New Jersey. (Am. Compl. ¶¶ 3-4, 6.) Second, the amount in controversy is $187,817.75, exceeding the $500 minimal threshold. (*Id.* ¶ 30; *see* 28 U.S.C. § 1335(a).) Third, Drakeel is a resident of this District. (*Id.* ¶ 3; *see* 28 U.S.C. § 1397.) Finally, although § 1335(a)(2) required the Insurance Companies to deposit the death benefits with the Court's Registry in full prior to bringing this interpleader action, the District's Local Civil Rules prohibit such action without court order. *See* L. Civ. R. 67.1(a)(1)(A); *United States Life Ins. Co. in City of New York v. Holtzman*, 723 F. App'x 141, 145 (3d Cir. 2018). Thus, courts in this District routinely impose a condition precedent on maintaining jurisdiction that requires the assets be deposited within a certain number of days following court order. *Wells Fargo Bank, N.A. v. Comments Sols., LLC*, No. 19-77, 2019 WL 6873257, at *3 (D.N.J. Dec. 17, 2019). Indeed, the Insurance Companies have already moved the Court to deposit the contested assets.

The Court finds conditional jurisdiction and moves next to Wanda's motions.[3]

### B. The Court Denies a Discretionary Dismissal; Grants a Stay.

Wanda does not challenge the Court's jurisdiction to hear this interpleader action under 28 U.S.C. § 1335. (*See generally* Wanda's Moving Br.) Instead, she asks the Court to decline jurisdiction for "a pending state proceeding which would obviate the need for the federal action." (*Id.* at 3.) The Court has discretion to decline or defer jurisdiction under certain circumstances in interpleader cases. *NYLife Distribs., Inc.*, 72 F.3d at 382. That discretion should be used with thoughtful care, however. *See id.* ("[T]he district court should bear in mind that neither the mere pendency of a parallel state court action nor the mere presence of state law issues in this case would support dismissal.") Thus, the Court is left with three options: decide whether Wanda is entitled to any of the death benefits under South Carolina matrimonial law, stay this action pending the outcome of the state court matter, or dismiss the suit altogether. *See id*.

First, the Court "should determine, as a threshold matter, whether the state court action is indeed 'parallel'; that is, whether it encompasses the competing claims to the [death benefits] that are raised here." *Id.* This is because the "absence of a parallel state proceeding" would "counsel against, if not proscribe, dismissal." *Id.* Parallel does not mean the actions are "identical, but rather substantially similar." *Sea Colony, Inc. v. Alcan Aluminum Corp.*, 653 F. Supp. 1323, 1326 (D.

---

[3] In their Amended Complaint, the Insurance Companies cite to both statutory interpleader and rule interpleader under Rules 22 and 67 (vis-à-vis 28 U.S.C. § 1332). It is true that all parties are diverse and the amount in controversy exceeds $75,000. (Am. Compl. ¶ 5.) But "[w]hereas statutory interpleader may be brought in the district where any claimant resides (28 U.S.C. [§] 1397), Rule interpleader based upon diversity of citizenship may be brought only in the district where all plaintiffs or all defendants reside (28 U.S.C. [§] 1391(a))." *State Farm Fire & Cas. Co.*, 386 U.S. at 528 n.3; *see also N.J. Sports Prods., Inc. v. Don King Prods., Inc.*, 15 F. Supp. 2d 534, 540 (D.N.J. 1998). The Court need not reach whether the Insurance Companies' Rule 22 interpleader claim could proceed in this venue because it finds statutory interpleader satisfied. Additionally, the Insurance Companies almost exclusively rely on § 1335 interpleader throughout their opposition briefing. (*See, e.g.*, Ins. Cos.' Opp'n Br. 4 ("Dismissing the action in favor of the Divorce action would defeat the purpose of 28 U.S.C. § 1335 . . . .").)

Del. 1987) (citation omitted). Here, the Court finds the two suits involve substantially the same issue: whether Wanda is entitled to any (or all) of the Policies' death benefits. Wanda's claim to the death benefits derives from her divorce proceeding. Indeed, the necessity of adjudicating that claim before distributing the Policies' proceeds is why the Insurance Companies filed this interpleader action. (Am. Compl. ¶ 34 ("[I]f the Court in the Family Court Action determines that the Mediated Agreement is enforceable," Wanda would own four policies and be the sole beneficiary of the fifth).) And although Drakeel declined to proceed in the South Carolina family court litigation (*see* Wanda's Reply Br. 2), that outcome may undoubtedly impact her rights should Wanda prevail.[4] Thus, to the extent the state court suit "encompasses the competing claims to the [Policies] that are raised here," the Court finds it substantially similar. *NYLife Distribs., Inc.*, 72 F.3d at 382; *Stone St. Asset Tr. v. Blue*, 821 F. Supp. 2d 672, 679 (D. Del. 2011) ("The pending actions do not need to be identical; however, they must be 'substantially similar.'" (citation omitted)). Because the Court finds the two actions substantially similar, it may discretionarily stay or dismiss the interpleader action. *NYLife Distribs., Inc.*, 72 F.3d at 382.

In making this discretionary determination, the U.S. Court of Appeals for the Third Circuit instructs that a stay is "preferrable" to dismissal. *Id*. at 383 ("[W]here the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, insofar as it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the controversy." (quoting *Wilton v. Seven Falls Company*, 515 U.S. at 277, 288 n.2 (1995)). This is because "while the state court action may finally resolve the case," there remains a possibility that certain issues will not be resolved and "further federal proceedings may

---

[4] Should Wanda's January 2022 motion to add Drakeel into the South Carolina state court action succeed, the parties in the state proceeding would be identical, apart from the stakeholder. (Wanda's Reply Br. Cert. of Katherine Ferguson, Ex. A, ECF No. 20-1.)

prove necessary." *Clay Reg'l Water v. City of Spirit Lake, Iowa*, 193 F. Supp. 2d 1129, 1155 (N.D. Iowa 2002). Thus, "[s]o long as a possibility of return to federal court remains, a stay rather than a dismissal is the preferred mode of abstention." *Id.* (citing *Wilton*, 515 U.S. at 288 n.2).

Before exercising that discretion, the Court is instructed to consider the following nonexhaustive factors: (1) "the avoidance of needless duplicative litigation," (2) "the purpose of the interpleader statute" in "determining where the competing claims that expose the stakeholder to multiple lawsuits and liability 'can better be settled,'" (3) the forum that protects "the stakeholder more effectively while providing the claimants with the more efficient, convenient, and expeditious vehicle to settle their dispute to the fund," and (4) ensuring "that procedural fencing, forum shopping or gamesmanship is not rewarded." *NYLife Distribs., Inc.*, 72 F.3d at 382-83 (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942)). The Court may also "consider any other factors it finds relevant." *Id.* at 383.

Here, considering all the relevant factors mentioned above, the Court finds a stay more appropriate than dismissal. For starters, the South Carolina action may not entirely "resolve the controversy." *Id*. at 382. Based on what the Court can glean from the parties' briefing, that action will determine whether the unexecuted divorce agreement transferred the life insurance policies to Wanda, but it may not adjudicate the rightful beneficiary of the Policies. (Ins. Cos.' Opp'n Br. 5; Drakeel's Opp'n Br. 8.) This is because even by Wanda's own interpretation of the Divorce Agreement, she should be the beneficiary of only one of the five Policies but merely the owner of the other four. (Am. Compl. Ex. Q, at *12.) Consideration of the Insurance Companies' interest in avoiding multiple litigations also suggests that a stay would better adhere to the "purpose of the interpleader statute" in protecting the stakeholder while the state court action proceeds. *Nw. Mut. Life Ins. Co. v. Sonia*, No. 14-3787, 2014 WL 4724642, at *3 (D.N.J. Sept. 23, 2014) (finding

federal interpleader action appropriate because a state court suit "cannot bind all claimants to a resolution that will protect [stakeholders] from multiple liability"); *NYLife Distribs., Inc.*, 72 F.3d at 382. Otherwise, absent consent from both Drakeel and Wanda, the Insurance Companies remain at risk of double litigation between the claimants. (Ins. Cos.' Opp'n Br. 4 ("The reason [the Insurance Companies] brought this action in federal court under section 1335 is that the statute is designed to assist 'a party who fears the vexation of defending multiple claims . . . by providing him the opportunity to satisfy his obligation in a single proceeding.'" (quoting *NYLife Distribs., Inc.*, 72 F.3d at 381)).)

But even though the Court finds good cause not to dismiss the matter, it finds equally good cause to stay it rather than proceed full steam ahead. *See NYLife Distribs., Inc.*, 72 F.3d at 382. For example, absent a stay the Court would be required to decide a fundamental question of state matrimonial law to adjudicate this matter, such as the validity of an unexecuted divorce agreement. *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 15 (2d Cir. 1990) ("[T]he district court should have abstained *in part* from adjudicating this action . . . otherwise [it] immerse[s] itself in domestic relations matters that are properly the province of the state courts . . . [and] intrude[s] impermissibly upon state law matrimonial jurisdiction."). An exercise particularly unnecessary considering that a South Carolina family court has presided over this same legal question since July 2021. (Am. Compl. Ex. Q.) Which raises another point—denying the stay would necessitate duplicitous litigation with the South Carolina family court.

As to the need to prevent procedural fencing or forum shopping, Wanda filed the state suit approximately three months before this interpleader action was initiated. (*Id.* (filed stamped July 30, 2021).) The parties also discussed resolving their dispute over the Policies' proceeds in family court well before the Insurance Companies filed this action. (Am. Compl. ¶ 35; Wanda's Moving

11

Br. Exs. A & B, ECF No. 12-1.) So, because Wanda initiated the state court suit first, a stay avoids any risk of rewarding "gamesmanship." (*See* Wanda's Moving Br. 6 ("Defendant Drakeel Burns had previously agreed to submit to the jurisdiction of the South Carolina Court to decide the issue, and in the meantime to release NY Life from liability.")); *see also Am. Gen. Life Ins. Co. v. Mann*, No. 09-434, 2011 WL 446048, at *3 (D. Del. Feb. 3, 2011) ("We would also expect the district court to evaluate the conduct of the parties in litigating both the federal and state actions to ensure that *procedural fencing, forum shopping or gamesmanship is not rewarded*." (quoting *NYLife Distribs., Inc.*, 72 F.3d at 382-83)).

As to the traditional stay factors, the Court fails to identify any undue prejudice to the nonmoving parties other than the passage of time. *See Neste Oil OYJ v. Dynamic Fuels, LLC*, No. 12-1744, 2013 WL 3353984, at *2 (D. Del. July 2, 2013) ("The mere potential for delay, however, is insufficient to establish *undue* prejudice."). But the Court does find that denying the stay would "create a clear case of hardship or inequity for the moving party," as Wanda would be required to litigate the same issue in two separate forums in parallel. *Metro. Life Ins. Co. v. Lawless*, No. 19-13688, 2019 WL 6050755, at *7 (D.N.J. Nov. 15, 2019) (quoting *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014)). The infancy of this litigation as well—initiated only six months ago— weighs in favor of a stay. *See Destination Maternity Corp. v. Target Corp.*, 12 F. Supp. 3d 762, 770 (E.D. Pa. 2014) ("In assessing the stage of litigation, courts routinely consider whether discovery is complete, whether a trial date has been set, the status of pending pretrial motions, and pretrial orders."). To be sure, there is little doubt that the stay "would simplify the issues" of this case, too, because it resolves whether Wanda's Divorce Agreement is enforceable. *See Cima Labs, Inc. v. Actavis Grp. HF*, No. 06-1970, 2007 WL 1672229, at *8 (D.N.J. June 7, 2007) (citation omitted).

In balancing the relevant factors and purpose of the federal interpleader statute, the Court finds a stay the preferred course over dismissal or proceeding forward with this suit. It finds a stay appropriately balances all competing interests between respecting judicial economy, avoiding duplicative litigation of the same issue, allowing the state court to decide domestic legal issues, avoiding potential procedural fencing, considering the interests the stakeholder, and faithfully carrying out the Court's statutory duty under § 1335. *See NYLife Distribs., Inc.*, 72 F.3d at 382-83.[5] The Court therefore grants a stay. Any party may move to lift the stay on a final order in the South Carolina family court litigation or on other good cause. Once the stay is lifted, the Court will resolve any remaining issues and disburse the Policies' proceeds.

## C. The Court Denies Dismissal for *Forum Non Conveniens*.

The Court's decision to stay the matter moots many, if not all, of Wanda's arguments in support of dismissal on *forum non conveniens* grounds. (*See* Wanda's Moving Br. 6-9 (arguing *forum non conveniens* dismissal as "alternative" relief).) District courts have "sound discretion" in deciding whether an alternative forum with jurisdiction is preferable and the moving party bears the burden of persuasion. *Tech. Dev. Co. v. Onischenko*, 536 F. Supp. 2d 511, 517 (D.N.J. 2007). In considering the relevant factors—such as convenience of the parties, the location of relevant evidence, and private and public interests—the Court finds that the *forum non conveniens* doctrine, which "must be sparingly applied," does not favor dismissal in light of the stay. *Id*. (citing *Am. Cyanamid Co. v. Picaso-Anstalt*, 741 F. Supp. 1150, 1155 (D.N.J.1990)).

---

[5] Although the Circuit's decision in *NYLife* involved statutory interpleader, the Court finds no meaningful distinction even if it considered this action under Rule 22. *See, e.g.*, *Hartford Fire Ins. Co. v. Coastal Int'l, Inc.*, No. 14-6196, 2015 WL 4038905, at *7 (N.D. Ill. June 30, 2015) ("Although the Seventh Circuit has not stated which standard applies to statutory interpleaders, it has indicated that *Wilton–Brillhart* applies to Rule 22 interpleaders.").

### D. The Court Grants the Insurance Companies' Interpleader Deposit Motion.

The Insurance Companies move the Court to deposit the death benefits at the center of this action under 28 U.S.C. § 1335(a)(2) and Rules 22 and 67. (*See generally* Mot. for Interpleader Deposit.) Because the Court has jurisdiction over this matter, as discussed above, it grants the Insurance Companies' Motion to Deposit Interpleader Funds.

### IV. CONCLUSION

In its discretion, the Court finds a stay appropriate for the above reasons, pending the resolution of the South Carolina family court action. Should that matter be resolved, any party may move to lift the stay. The Court also finds the Insurance Companies made the requisite showing for an interpleader action and will accept the Policies' death benefits into the Court's Registry. An Order consist with this Memorandum Opinion will follow.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE